```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
```
ANNE WINDER,

                Plaintiff,                 **MEMORANDUM OF DECISION & ORDER**

       -against-                 2:17-cv-01283 (ADS)(AYS)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
```
----------------------------------------------------------X
```

**FILED
CLERK**

3/29/2019 3:44 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

**Jeffrey D. Delott, Esq., Of Counsel.**
*Attorney for the Plaintiff*
366 North Broadway
Suite 410k-3
Jericho, NY 11753

**United States Attorney's Office
Eastern District of New York**
*Counsel for the Defendant*
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
       By:    Dara A. Olds, Assistant United States Attorney, Of Counsel.

**SPATT, District Judge**:

On March 7, 2017, plaintiff Anne Winder (the "Plaintiff") commenced this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant"), finding that she is not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act").

On September 26, 2018 the Court referred the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) to United States Magistrate Judge Anne Y. Shields.

1

On February 26, 2019 Judge Shields issued a Report and Recommendation ("R&R"), recommending that the Court grant the Defendant's motion, deny the Plaintiff's motion, and affirm the decision of the Defendant.

Presently before the Court are the Plaintiff's objections to the R&R. For the reasons stated below, the Court overrules the Plaintiff's objections and adopts the R&R in its entirety.

## I. BACKGROUND

### A. THE ALJ DECISION

The Plaintiff filed an application for Social Security Disability Insurance Benefits on September 20, 2013, alleging disability and inability to work from November 14, 2004 due to: carpal tunnel syndrome, trigger fingers, bipolar disorder, and type II diabetes.

On October 28, 2013, the Social Security Administration ("SSA") denied the Plaintiff's application.

On December 24, 2013, the Plaintiff filed a request for a hearing before an administrative law judge.

On January 16, 2015, the Plaintiff appeared with counsel for a hearing before Administrative Law Judge Alan B. Berkowitz (the "ALJ").

On May 7, 2015, the ALJ found that the Plaintiff was not disabled under the five-step sequential evaluation process for determining whether a claimant's impairment meets the definition of "disability." See 20 C.F.R. § 404.1520.

a. At Step One, the ALJ found that the Plaintiff had not engaged in "substantial gainful activity" during the period from her alleged onset date (November 14, 2004) through the date last insured (June 30, 2010).

b. At Step Two, the ALJ determined that the Plaintiff's "right carpal tunnel syndrome" qualified as a "severe impairment" pursuant to 20 C.F.R. § 404.1520(c).

c. At Step Three, the ALJ found that the Plaintiff "did not have an impairment or combination of impairments" that equaled one of the per se disabling conditions enumerated in 20 C.F.R. Pt. 404, Subpart P, App. 1 of the Act's regulations.

d. At Step Four, after careful consideration of the entire record, the ALJ determined that the Plaintiff had the residual functional capacity ("RFC") to perform light work, as set forth in 20 C.F.R. 404.1567(b), except that she is "limited to only occasional use of [her] dominant right hand for gripping, grasping, and turning objects."

e. Finally, at Step Five, abiding the testimony of the vocational expert ("VE"), the ALJ determined that the Plaintiff was unable to perform "any past relevant work." 20 C.F.R. § 404.1565. However, the ALJ also found that, "considering [the Plaintiff's] age, education, work experience, and [RFC]," there are a "significant number [of jobs] in the national economy" that the Plaintiff can perform and that are available to her.

On May 9, 2015, the Plaintiff filed a request for review. On January 19, 2017, the Appeals Council denied the request. On March 7, 2017, the Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) for review of the May 7, 2015 ALJ decision.

**B. THE R&R.**

The R&R found that, in finding that the Plaintiff was not disabled under the Act, the ALJ correctly applied the five-step framework, rejecting the Plaintiff's arguments that he: (i) denied her a supplemental hearing to challenge the consultative examiner's testimony; (ii) erred by determining that her "trigger fingers, cubital tunnel syndrome, and cervical radiculopathy" were not also severe impairments; (iii) arbitrarily assigned "great" weight to the testimony of medical

3

expert, Dr. Louis Fuchs ("Dr. Fuchs") thus, a fortiori, ignoring the "great" weight to be accorded to the medical testimonies of Dr. William A. Healy, III ("Dr. Healy"), an orthopedic surgeon, and two neurologists, Dr. Max Rudansky ("Dr. Rudansky") and Dr. Suja Johnkutty ("Dr. Johnkutty"); (iv) misconstrued her credibility; and (v) lacked a substantial evidentiary basis for concluding that she could perform other work.

## C. THE PLAINTIFF'S OBJECTIONS.

The Plaintiff objects that the R&R: (i) erred by finding the ALJ's determination of one severe impairment instead of four to be substantially supported by evidence derived from the record as a whole; (ii) failed to give controlling weight, or greater weight to Dr. Healy's opinion than Dr. Fuchs's; (iii) erred by upholding the ALJ's assessment of the Plaintiff's credibility; and (iv) improperly concluded at Step Five that the Appellant had the residual function capacity to perform light work with few limitations.

## II. DISCUSSION

### A. DISTRICT COURT REVIEW OF A MAGISTRATE JUDGE'S R&R

In the course of its review of a Magistrate Judge's report and recommendation, the District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1); *see DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y. 1994). Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition." FED. R. CIV. P. 72(b)(2); accord 28 U.S.C. § 636(b)(1)(C). The district court must conduct a de novo review of those portions of the R&R or specified proposed findings or recommendations to which timely and proper objections are made. 28 U.S.C. § 636(b)(1)(C); *see* FED. R. CIV. P. 72(b)(3) ("The district judge may accept,

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). The Court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F.Supp.2d 804, 811 (S.D.N.Y. 2008); *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y. 1985).

In addition, "[t]o the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Toth v. N.Y. City Dep't of Educ.*, No. 14-cv-3776, 2017 WL 78483, at *7 (E.D.N.Y. Jan. 9, 2017) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (quoting *Ortiz v. Barkley*, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008))), *vacated on other grounds sub nom. Toth on behalf of T.T. v. City of New York Dep't of Educ.*, —— Fed.Appx. ——, No. 17-cv-383, 2018 WL 258793 (2d Cir. Jan. 2, 2018); *Frankel v. City of N.Y.*, Nos. 06-Civ.-5450, 07-cv-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error."); *Pall Corp. v. Entergris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (holding that if the objecting party "makes only conclusory or general objections, ... the Court reviews the [R&R] only for clear error" (internal citations omitted)).

"The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy v. Manson*, 554 F.Supp. 1275, 1286 (D. Conn. 1982) (internal citations omitted), *aff'd*, 714 F.2d 234 (2d Cir. 1983). "There is no

increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Toth*, 2017 WL 78483, at *7 (*quoting Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y. 1992)).

**B. APPLICATION TO THE FACTS OF THIS CASE**

As an initial matter, the Plaintiff's objections simply seek to relitigate issues already considered by Judge Shields. Specifically, she presents nothing overlooked or misunderstood in the R&R, instead filling her brief with the same unsuccessful arguments raised in the initial briefing. Consequently, the Court deems it appropriate to review the R&R for clear error, because objections are not a vehicle for appealing every finding by the magistrate judge that parties happen to disagree with. Citing *Cora v. Colvin*, No. 15-cv-1549, 2016 WL 4581343 (S.D.N.Y. Sept. 1, 2016), the Plaintiff would like the Court to apply a *de novo* review to the R&R. Judge Nathan's reasoning is somewhat persuasive. However, her decision is not binding on the Court and goes against the approach predominately taken in this district. While the Court agrees that courts should abstain from clear error review in cases where the objections relate to a R&R's "conclusions and its framing of the issues," *id.* at *1, this is not such a case. Rather than broadly contesting the framing of issues, the objections are essentially a poorly organized line-by-line rebuttal of each statement in the R&R. In the Court's view, permitting *de novo* review of the Plaintiff's shotgun approach would counteract the efficiency-based rationale for submitting the parties' motions to Judge Shields for a recommendation. Therefore, finding no clear error, the Court adopts the R&R in its entirety.

Nonetheless, the Court also reviewed the R&R under the *de novo* standard. For the reasons that follow, the Court concurs with its reasoning. Before proceeding, however, the Court separately notes that a number of the Plaintiff's objections are unnecessarily incendiary and demonstrate a

6

stunning amount of disrespect for Judge Shields. Based on absolutely no evidence, the Plaintiff deemed it appropriate to challenge her objectivity. This sort of conduct would be inappropriate when lobbed against another litigant. It is especially uncalled for when applied to a United States Magistrate Judge. With that in mind, the Court will address each of the Plaintiff's objections.

**1. As to the ALJ's Finding of One Severe Impairment.**

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Desmond v. Astrue*, No. 11-cv-0818, 2012 WL 6648625, at *3 (N.D.N.Y. Dec. 20, 2012) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). "The Act defines 'basic work activities' as 'abilities and aptitudes necessary to do most jobs,' and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Morgan v. Astrue*, 11-cv-1009, 2014 WL 318184, at *9 (W.D.N.Y. Jan. 29, 2014) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)).

"[T]he severity prong is intended as a de minimis standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, 1:05-cv-4967, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring, joined by Stevens, J.)); *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995) (holding that "the severity regulation is valid only if applied to screen out de minimis claims"). Of importance, courts in the Second Circuit have found that "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal

7

effect on an individual's ability to work." *Juarbe v. Astrue*, 3:10-cv-1557, 2011 WL 4542964, at *6 (D.Conn. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4542962 (D.Conn. Sept. 28, 2011) (quoting *Rosario v. Apfel*, No. 97-cv-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)) (internal quotation marks omitted). "If [ ] the disability claim rises above the de minimis level, then the analysis must proceed to step three." *Mattei v. Barnhart*, 01-cv-1678, 2003 WL 23326027 at *6 (E.D.N.Y.2003).

Here, the ALJ found that the Plaintiff had one severe impairment, right CTS, but made no specific mention of the Plaintiff's trigger finger, CUTS, cervical radiculopathy or diabetes during his Step Two analysis. However, he proceeded through the sequential evaluation and considered the "combination of impairments," "the entire record" and "all symptoms," particularly those related to the Plaintiff's hand and fingers, such as her complaints of right-hand numbness and tingling. In doing so, the ALJ took into account the medical evidence proffered by the Plaintiff and fashioned the RFC with her hand and finger limitations in mind.

It is settled – and the Plaintiff does not contest this rule of law in her objection – that failure to find every impairment at issue severe at Step Two is not reversible error if the ALJ incorporates those impairments in the later steps of the sequential analysis. *See Woodmancy v. Colvin*, 577 F. App'x 72, 74 n.1 (2d Cir. Sept. 2014) (summary order) (finding no error warranting remand because the ALJ did identify severe impairments at step two and the claim therefore proceeded through the sequential evaluation process); *O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. March 11, 2014) (summary order) (finding any error by ALJ in excluding plaintiff's knee injury as a severe impairment was harmless because ALJ identified other severe impairments and considered the knee injury in subsequent steps); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding any error for failure to find that plaintiff's anxiety disorder

8

and panic disorder were severe impairments was harmless because the ALJ found other severe impairments, continued through the remaining steps of the analysis and considered plaintiff's anxiety disorder and panic disorder at later steps).

In support of her claim that the R&R erred at Step Two, the Plaintiff makes the following objections: (1) the R&R improperly accepted the ALJ's substitution of his own judgment for competent medical opinion; (2) the R&R applied the wrong legal standard by requiring that the Plaintiff allege her impairments met the criteria at Step Three; and (3) the R&R disregarded certain functional limitations. All of these objections are beside the point. As the R&R recognized, the ALJ *did* find the Plaintiff suffered a severe impairment at Step Two and thus continued to the later steps of the sequential analysis. Because the ALJ addressed the impairments at issue in his Step Two analysis at Steps Four and Five, their omission from his Step Two analysis is of no moment.

Therefore, the Court overrules the Plaintiff's objection and concurs with the R&R's analysis at Step Two.

**2. As to the ALJ's Evaluation of Medical Opinion.**

The Plaintiff objects to the R&R's concurrence with the ALJ's evaluation of the medical opinions in the case, namely, that he gave too much weight to the opinion of Dr. Fuchs and too little weight to the opinions of Dr. Healy, Dr. Rudansky, and Dr. Johnkutty. For the following reasons, the Court finds that the R&R properly assessed the relevant medical opinions.

*a. As to the Medical Opinion of Dr. Healy.*

Dr. Healy was the Plaintiff's "treating physician" from October 29, 2008 until the date last insured. Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

9

inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequent[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot

10

substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Here, the ALJ gave "little weight" to the opinion of Dr. Healy. The Plaintiff faults this decision for a number of equally uncompelling reasons.

First, the Plaintiff erroneously claims that the ALJ failed to consider the 404.1527(c) factors. However, the ALJ assigned less weight to Dr. Healy's opinion because his testimony contradicted his own contemporaneous treatment notes, his prior testimony before the Workers' Compensation Board and the Plaintiff's testimony about her impairments. Additionally, the ALJ noted the existence significant gaps in treatment and the absence of treatment records for important time periods. Thus, it is clear that the ALJ took into consideration the frequency, length and nature of the treatment, in addition to the amount and consistency of the evidence in support of Dr. Healy's opinion. Essentially, the Plaintiff's objection is that the ALJ failed to robotically make a factor-by-factor determination when explaining his reasons for departing from Dr. Healy's opinions. But "[a]n ALJ does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion.'" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (quoting *Halloran*, 362 F.3d at 32). Because those reasons are apparent from his decision, the ALJ did not depart from the treating physician rule.

Second, the Plaintiff alleges that the R&R misapplied the 404.1527(c)(4) factors because the ALJ failed to consider the consistency of Dr. Fuchs' opinion with the medical evidence. The Court will address the weight assigned to Dr. Fuchs' opinion where appropriate. For now, it suffices to say that this argument would only warrant assigning less weight to Dr. Fuchs' opinion. It does not justify giving more weight to Dr. Healy in light of the flaws identified by the ALJ.

Third, the Plaintiff contends that the inconsistencies identified by the ALJ were factually and legally erroneous. The errors pointed to by the Plaintiff, however, are obfuscatory at best. Without wading into each nit cursorily picked by the Plaintiff, it is apparent from the record that Dr. Healy provided an unduly restrictive assessment of Plaintiff's ability to work. As a result, the Court agrees with the R&R that the ALJ was justified in assigning little weight to his opinion.

    b. *As to the Medical Opinion of Dr. Fuchs.*

Dr. Fuchs reviewed available medical records and completed a medical interrogatory on March 26, 2015. The ALJ afforded Dr. Fuchs's opinion "considerable weight" because it was "well supported by clinical and diagnostic findings." The Court finds the Plaintiff's objections to the R&R's assessment of Dr. Fuchs's opinion unpersuasive.

First, the Plaintiff contends that the R&R incorrectly believed that Dr. Fuchs was a consultative examiner, who conducted a personal examination of the Plaintiff, rather than a medical expert, who did not. Medical experts are normally entitled to less weight than consultative examiners because the testimony of experts who have actually examined a plaintiff are more reliable. The Plaintiff's argument is a red herring. It is patently clear from the R&R that Judge Shields was not under the mistaken belief that Dr. Fuchs conducted an examination of the Plaintiff. Indeed, the R&R specifically notes that Dr. Fuchs completed the interrogatories based on his review of the administrative record. ECF 41 at 8–9, 24, 27. Although the R&R on some occasions referenced "consultative examiners," the R&R never references a non-existent examination of the Plaintiff. Rather, the R&R found that "non-examining medical sources may supersede examining ones if the non-examining sources have support in the record for the weight accorded." *Id.* at 24. The R&R thus properly understood the nature of Dr. Fuchs's testimony when assigning weight.

Second, the Plaintiff argues that Dr. Fuchs's opinion could not override that of Dr. Healy (or constitute substantial evidence) because he never examined the Plaintiff. In support of this claim, the Plaintiff cites *Destina v. Berryhill*, No. 2:17-cv-02382, 2018 WL 4964103 (E.D.N.Y. Oct. 15, 2018) (Spatt, J.), where the Court found that Dr. Fuchs's opinion was insufficient to override the testimony of the plaintiff's treating physician. However, in that case, Dr. Fuchs failed to take the entire administrative record into account and his testimony contradicted that of "the [p]aintiff's orthopedic surgeon who treated her for more than 12 years" with no inconsistencies requiring diminished weight. *Id.* at 8. That is not the case here, for the reasons explained above.

Third, the Plaintiff claims Dr. Fuchs failed to consider the EMG testing. Unlike *Destina*, where the Court rejected Dr. Fuchs' testimony because he testified that he found MRI results unimportant, *Destina*, 2018 WL 4964103, at *8, Dr Fuchs here certified in his response that he reviewed the entire record, which included the EMG testing. The Plaintiff has no basis for her assertion other than the lack of a specific reference to the testing in Dr. Fuchs's written commentary on the interrogatories. In the absence of explicit evidence that Dr. Fuchs ignored part of the record, the Plaintiff's theory holds no water.

Finally, the Plaintiff takes issue with the length of Dr. Fuchs written interrogatory response. The Court does not see why the fact that Dr. Fuchs only wrote twelve words means that his opinion should be entitled to less weight, especially because his written opinion came in conjunction with a twelve-page diagnostic checklist assessing the Plaintiff's physical impairments. Considering the overstuffed nature of the Plaintiff's objections, the Court suggests that the Plaintiff is under the mistaken impression that verboseness connotes quality.

Therefore, the Court finds that the ALJ assigned the appropriate weight to the opinion of Dr. Fuchs.

c. *As to the Medical Opinion of Dr. Rudansky.*

The ALJ assigned little weight to the medical opinion of Dr. Rudansky. The Plaintiff contends that the R&R committed a clear error of law and fact by finding the ALJ properly denied Dr. Rudansky's status as a treating physician. The Plaintiff claims her argument was not that Dr. Rudansky was a treating physician whose opinion was entitled to controlling weight, but rather that, as an examining physician, his opinion was entitled to greater weight than Dr. Fuchs, who never saw the Plaintiff. The Court has already addressed the Plaintiff's argument as it pertains to Dr. Fuchs.

With that in mind, the Plaintiff's remaining defenses of Dr. Rudansky's opinion are unavailing. Dr. Rudansky only saw the Plaintiff once – more than nine years after the alleged disability onset date and nearly four years after the date last insured. Moreover, Dr. Rudansky based his judgments on his contemporary examination of the Plaintiff and not her historical treatment data. Nothing the Plaintiff cites (such as Dr. Rudansky notation that the onset of her injuries started in 2005 and the fact that Dr. Healy referred her to Dr. Rudansky) belies the fact that Dr. Rudansky presented his findings without any relationship to the Plaintiff's prior treatment. When combined with the inconsistency between his RFC assessment with his own medical findings, as well as those of Dr. Healy's notes, the ALJ properly diminished the weight assigned to Rudansky's medical opinion.

d. *As to the Medical Opinion of Dr. Johnkutty.*

The ALJ found that Dr. Johnkutty's medical opinion had probative value in that it corroborated the Plaintiff's testimony that she injured her right hand, but that it did not establish that she had disabling limitations. The Plaintiff does not appear to object to this finding in and of itself, but objects that that the R&R "glossed over" the fact that this opinion was consistent with

Dr. Healy's. That is not the case. Dr. Johnkutty's opinion was only consistent with that of Dr. Healy to the extent that the opinion corroborated Dr. Healy's assessment that the Plaintiff injured her hand. It provided no additional support to Dr. Healy's opinion regarding her limitations, for example, because it noted that the Plaintiff's reflexes were normal, and her sensation was intact. As a result, the R&R did not err in assigning the weight to be afforded to Dr. Johnkutty's opinion.

Accordingly, the Court overrules the Plaintiff's objection and concurs with the R&R's assessment of the medical opinions.

**3. As to the ALJ's Assessment of the Plaintiff's Credibility.**

Here, the ALJ concluded that Plaintiff's medical impairments could cause the symptoms she alleged, but declined to fully credit her testimony regarding the intensity, persistence, and limiting effects of the symptoms. The R&R recognized that the ALJ "explicitly summarized his credibility finding in one paragraph" but concurred with his reasoning which "stretched across six pages evaluating both the available medical records as they pertained to The Plaintiff, and her subjective complaints." ECF 41 at 25.

First, the Plaintiff objects that the R&R "admitted" that the ALJ's analysis of the Plaintiff's credibility was unclear and occurred in a single paragraph. In her view, the ALJ's reasoning is analogous to the forbidden use of the catch-all "for the reasons explained in this decision" to assess a claimant's credibility. *See Owens v. Berryhill*, No. 2:17-cv-2632, 2018 WL 1865917, at *9 (E.D.N.Y. Apr. 18, 2018) (Spatt, J.). However, unlike *Owens*, the ALJ's summation of the Plaintiff's testimony contained more than that phrase. It specifically listed the factors that casted doubt upon her allegations, rather than obliquely referencing the record as a whole. Consequently, the ALJ "explain[ed] that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Id.*

Second, the Plaintiff objects that ALJ failed to afford her complaints of pain and weakness sufficient weight because they were supported by objective evidence. But as the R&R explained, the Plaintiff's testimony was inconsistent with other evidence in the record, including her treatment records and treatment activities, amongst other things.

Third, the Plaintiff objects that the ALJ did not consider all of the factors required by 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii) (explaining that that the ALJ must evaluate the claimant's testimony in light of: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain"). The Plaintiff is incorrect. In addition to the Plaintiff's daily activities, the ALJ considered: the Plaintiff's treatment, which included hand surgery and Dr. Healy's recommendation that she have physical therapy; the Plaintiff's testimony that she did not take any medication for her symptoms in her right hand; and the Plaintiff's limited work history. The R&R did not err simply because it did not walk through the factors robotically as the Plaintiff would have liked. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (ALJ's failure to discuss factors not relevant to his credibility determination did not require remand as the ALJ provided specific reasons for his credibility determination and the court could "glean the rationale" of the ALJ's decision from the record).

Lastly, the Plaintiff objects to the reasons given for discrediting her testimony. In sum, the Plaintiff claims that R&R engaged in a *post-hoc* rationalization of the ALJ's decision based on a misreading of the Plaintiff's testimony. Specifically, the Plaintiff alleges that the R&R relied on

two considerations which were not acceptable § 404.1529(c) factors and a selective accounting of the Plaintiff's daily activities. The Plaintiff is mischaracterizing the R&R, which discussed the Plaintiff's daily activities and treatment history *in conjunction with* "incongruities in assessments by her treating physicians." ECF 41 at 26. As noted in the R&R, the ALJ discussed Dr. Healy's treatment notes, amongst pertinent medical evidence, and how they related to the Plaintiff's symptoms.

Therefore, the Court overrules the Plaintiff's objection and concurs with the R&R's assessment of the Plaintiff's credibility.

**4. As to the ALJ's Finding that the Plaintiff Could Perform Other Work.**

The Plaintiff argues that the Defendant did not meet her burden at Step Five to show that she could perform other work that existed in significant numbers in the national economy. Incorporating his RFC assessment and the Plaintiff's functional limitations, the ALJ determined there were three jobs that the Plaintiff could perform: ticket taker, sandwich board carrier, and hostess. Putting aside the Plaintiff's contention that the RFC determination insufficiently accounted for the Plaintiff's limitations, which the Court already addressed, the Court finds the Plaintiff's objections unpersuasive.

First, the Plaintiff claims that the finding that she could work as a hostess, which requires a higher skill level than the plaintiff's last job, is contrary to SSA policy. However, the ALJ determined that the Plaintiff had no past relevant work, meaning that, in the Plaintiff's own words "transferability of skills is not an issue." ECF 44 at 21. Thus, the ALJ's determination cannot contradict SSA policy because the skill level of the Plaintiff's previous work is immaterial at this step of the analysis. The more pertinent question, which the ALJ focused on, is whether the

Plaintiff can adjust to other work in light of her RFC, age, education and work experience. *See* 20 CFR § 404.1569a.

Second, the Plaintiff objects that the R&R improperly failed to resolve a conflict between the testimony of the vocational expert and the DOT. In the Plaintiff's view, ticket taker and hostess require bilateral use of the hands under the DOT because the description requires frequent handling. Accordingly, the Plaintiff believes the vocational expert created an apparent conflict by stating that the jobs could be performed with one hand. However, the Court disagrees with the Plaintiff that requiring "handling" implies ambidexterity, meaning that there is no apparent conflict between the VE testimony and the DOT. The Plaintiff cites nothing in either SSA regulations or common usage supporting that inference. The cases relied upon by the Plaintiff are therefore distinguishable because they relate to the particularities of nonexertional limitations on overhead reaching. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) ("In both the 1985 Policy Statement and common usage, "reaching" includes overhead reaching."); *Eric M. v. Comm'r of Soc. Sec.*, No. 5:17-cv-1182, 2019 WL 762220, at *4 (N.D.N.Y. Feb. 21, 2019) ("Courts analyzing bilateral reaching limitations have typically found that a significant limitation on overhead reaching with both hands, particularly in the context of sedentary jobs, 'may eliminate a large number of occupations a person could otherwise do,' and have opined that where a claimant has such limitations, the use of a vocational expert is required at step five in order for the Commissioner to meet her burden of proof.").

Third, the Plaintiff objects that the vocational expert based her estimate of the amount of work in the economy on an unreliable jobs database. The Court notes the out-of-Circuit authority relied upon by the Plaintiff but agrees with the R&R that nothing in Second Circuit case law provides the Court reason to be suspicious of the method used by the vocational expert. *See Lillis*

*v. Colvin*, No. 3:16-cv-269, 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) ("While the result may be different were we in the Seventh Circuit, the VE's estimates are apparently good enough in this jurisdiction. In the Second Circuit, "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally."); *Bailey v. Colvin*, No. 1:15-cv-00991, 2017 WL 149793, at *4 (W.D.N.Y. Jan. 14, 2017) ("The Court finds that the ALJ did not err in relying on the VE's testimony, considering the VE's broad experience and the explicit understanding that he estimated the number of job titles available to plaintiff within the specific DOT codes cited—not within the broader OES codes.").

Therefore, the Court overrules the Plaintiff's objection and concurs with the R&R's application of Step Five.

### III. CONCLUSION

For the foregoing reasons, the Court overrules the Plaintiff's objections and adopts the R&R in its entirety. Therefore, the Court **DENIES** the Plaintiff's motion for judgment on the pleadings, **GRANTS** the Defendant's cross-motion for judgment on the pleadings, and **AFFIRMS** the decision of the Defendant. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York

March 29, 2019

                                         /s/ Arthur D. Spatt

                                         ARTHUR D. SPATT

                                         United States District Judge